**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

Eastern District of Kentucky
FILED

MAY 14 2026

AT COVINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.                                              INDICTMENT NO. 26-39-SCM-CJS

JAMES MATTHEW RYAN

\*    \*    \*    \*    \*

THE GRAND JURY CHARGES:

### COUNTS 1–5
### 18 U.S.C. § 1341

### BACKGROUND

1. At all relevant times, Transmoto, Inc. (d/b/a Northern Kentucky Auto Sales or NKY Auto Sales) operated as a used car dealership with 2 locations: (1) on Norbotten Drive in Florence, Boone County, Kentucky (where its principal place of business and office were located) and (2) on Plaza Drive in Cold Spring, Campbell County, Kentucky. NKY Auto Sales promoted itself as "one of the largest rebuilt auto companies in all of Kentucky."

2. At all relevant times, **JAMES MATTHEW RYAN** was the General Manager of NKY Auto Sales.

3. At all relevant times, a Kentucky car dealer could obtain a salvage title for a vehicle that had been previously designated as "destroyed," "junked," or "non-repairable" by another state. In Kentucky, a salvage title was red in color and

expressly stated that it "may not be eligible for titling in all states." There were two types of red Kentucky titles: salvage and rebuilt.

4. At all relevant times, a salvage title could be improved to rebuilt after the vehicle was repaired and inspected by a certified inspector. In Kentucky, inspectors must be certified through the Department of Vehicle Regulation and designated by the County Sheriff. To become a certified inspector, an individual must attend a certification course offered by the Kentucky Transportation Cabinet and Kentucky State Police. Upon passing a written examination, inspectors received a certificate and unique inspector number. Kentucky law listed the points of inspections that a certified inspector must make (compare the VIN at two points on the vehicle to the VIN listed on the title application, observe the primary odometer, and record the mileage on the title application) and required the inspector to personally and physically inspect the vehicle.

5. At all relevant times, applications for red salvage titles were submitted to the County Clerk's Office, which scanned the documents and uploaded them into a system called Print on Demand Decal (PODD). The application was then entered into the Automated Vehicle Information System (AVIS) and tracked by the Transportation Cabinet. If the application was approved, it was submitted to American Banknote Corporation (AB Corp.) for printing. AB Corp. is a private company with printing facilities located in Tennessee. The Transportation Cabinet submitted approved red salvage title applications to AB Corp. electronically and

AB Corp. then printed and mailed the titles to the applicant via USPS. Applications for red rebuilt titles were generally processed the same way.

## SCHEME AND ARTIFICE TO DEFRAUD

6. From on or about a date unknown and continuing through on or about February 22, 2023, in Boone and Campbell Counties, in the Eastern District of Kentucky and elsewhere, **JAMES MATTHEW RYAN** knowingly executed a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent representations.

## PURPOSE OF THE SCHEME

7. The purpose of the scheme was to facilitate the sale of used vehicles that had red titles and were not eligible for titling in other states, including Ohio. **JAMES MATTHEW RYAN** circumvented that prohibition by submitting, and causing to be submitted, false and fraudulent vehicle inspection forms and title paperwork in Kentucky, Utah, Ohio, and elsewhere.

## MANNER AND MEANS OF THE SCHEME

8. Since approximately 2021, **JAMES MATTHEW RYAN** and NKY Auto Sales sold approximately 160 vehicles to residents of Ohio through a process known as "title washing," which is generally described below.

9. NKY Auto Sales would sell a vehicle, which had a junk title/paperwork from another state, to an Ohio resident.

10. NKY Auto Sales would then obtain a red salvage title for the vehicle. Sometimes, NKY Auto Sales had the red salvage title at the time of the sale.

11. NKY Auto Sales would then apply for a red rebuilt title and certify that the vehicle had been repaired and inspected. On some applications, **JAMES MATTHEW RYAN** (1) falsely certified that the vehicle had been inspected by a certified inspector when, in fact, it had not and (2) forged the deputy's signature.

12. Once the application was approved and the title was received, NKY Auto Sales would send and transfer the Kentucky red rebuilt title to a car dealership/entity in a state that accepted such titles. Those states included: Utah, New Jersey, and South Carolina.

13. For example, NKY Auto Sales sent Kentucky red titles to GP Motor Company, in Utah, which would then apply for and obtain a rebuilt/restored title from the State of Utah. In doing so, GP Motor Company would falsely certify that it was the owner of the vehicle, was in possession of the vehicle, and that the vehicle had been inspected.

14. Once the application was approved and the title was issued, GP Motor Company would send the Utah title back to NKY Autos, which would re-assign the title to the buyer and use that title to obtain an Ohio title (which it otherwise could not have done) in the buyer's name.

15. In some cases, the vehicle had been transferred to the buyer months before this process was completed or even started.

## EXECUTION OF THE SCHEME

From on or about a date unknown and continuing through on or about February 22, 2023, in Boone and Campbell Counties, in the Eastern District of Kentucky and elsewhere,

### JAMES MATTHEW RYAN

knowingly executed a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent representations, and for the purpose of executing such scheme and artifice, knowingly caused to be delivered by mail or by any private or commercial interstate carrier according to the direction thereon, any such matter and thing, as set forth below:

| Count: | Date: | Description of mailing: |
|---|---|---|
| Count 1 | July 1, 2021 | Red Rebuilt title mailed via USPS from AB Corp. to NKY Autos for a 2013 Subaru Outback |
| Count 2 | December 27, 2021 | Title for a 2017 Jeep Renegade sent from NKY Autos to GP Motor Co. via UPS |
| Count 3 | January 11, 2022 | Titles sent from NKY Autos to GP Motor Co. via UPS, including a title for a 2013 Hyundai Elantra |
| Count 4 | January 31, 2022 | Titles sent from NKY Autos to GP Motor Co. via UPS, including a title for a 2016 Ford Fusion |
| Count 5 | February 7, 2022 | Titles sent from NKY Autos to GP Motor Co. via UPS, including a title for a 2015 Hyundai Sonata |

Each count in violation of 18 U.S.C. § 1341.

## COUNT 6
### 18 U.S.C. § 1028A(a)(1)

On or about May 24, 2021, in Boone County, in the Eastern District of Kentucky,

**JAMES MATTHEW RYAN**

knowingly used, without lawful authority, a means of identification of another person, specifically, the name of M.G., during and in relation to the felony violation set forth in Count 1, knowing that the means of identification belonged to another actual person, all in violation of 18 U.S.C. § 1028A(a)(1).

### FORFEITURE ALLEGATION
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(2)(B)**
**28 U.S.C. § 2461**

1.      By virtue of the commission of the offenses alleged in Counts 1-6 of the Indictment, **JAMES MATTHEW RYAN** shall forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to the violation(s) of 18 U.S.C. § 1341. Any and all interest that **JAMES MATTHEW RYAN** has in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 982(a)(2)(B) and 28 U.S.C. § 2461.

2.      The property to be forfeited includes, but is not limited to, the following:

**MONEY JUDGMENT:**
A forfeiture money judgment representing the amount of proceeds that the Defendant obtained as a result of the violations alleged in this Indictment and/or representing the value of property used to commit and/or facilitate the commission of the violations alleged herein.

3.      If any of the property listed above, as a result of any act or omission of the Defendant(s), (A) cannot be located upon the exercise of due diligence; (B) has been

transferred or sold to, or deposited with, a third party; (C) has been placed beyond the

jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been

commingled with other property which cannot be divided without difficulty, the United

States shall be entitled to forfeit substitute property pursuant to 21 U.S.C. § 853(p).

**A TRUE BILL**

**FOREPERSON**

**JASON D. PARMAN**
**FIRST ASSISTANT UNITED STATES ATTORNEY**

**ELAINE K. LEONHARD**
**ASSISTANT UNITED STATES ATTORNEY**

## PENALTIES

**COUNTS 1–5:**    Not more than 20 years imprisonment, $250,000 fine, and 3 years supervised release.

**COUNT 6:**    Two years imprisonment to run consecutively to any other term of imprisonment imposed.

**PLUS:**    Mandatory special assessment of $100 per count.

**PLUS:**    Restitution, if applicable.